**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMANDA BENGOECHEA, RACHEL BERKOWITZ, SHANTEL HASH, REBEKKA LIEN, DIANA LOPEZ, SHAINTIEL POOLE, JULLY ROMERO, and JENNIFER SIMONI, individually and on behalf of all those similarly situated, | |
| Plaintiffs, | Case No.: 1:25-cv-1402 |
| v. | |
| ROADGET BUSINESS PTE. LTD d/b/a SHEIN, SHEIN US SERVICES. LLC., SHEIN DISTRIBUTION CORPORATION, BIANCA ANASTASIA ARCORI, ABBY BAGLEY, MANUELA BRIT, TALA GOLZAR, ANASTASIA KARANIKOLAOU, CYDNEY MOREAU, and CINDY PRADO, | JURY TRIAL DEMANDED |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs, AMANDA BENGOECHEA, RACHEL BERKOWITZ, SHANTEL HASH, REBEKKA LIEN, DIANA LOPEZ, SHAINTIEL POOLE, JULLY ROMERO, and JENNIFER SIMONI (collectively "Plaintiffs"), on behalf of themselves and all those similarly situated, bring this Class Action Complaint against ROADGET BUSINESS PTE. LTD d/b/a SHEIN, SHEIN US SERVICES LLC, SHEIN DISTRIBUTION CORPORATION, BIANCA ANASTASIA ARCORI, ABBY BAGLEY, MANUELA BRIT, TALA GOLZAR, ANASTASIA KARANIKOLAOU, CYDNEY MOREAU, and CINDY PRADO alleging as follows:

## <u>INTRODUCTION</u>

1. With millions of users all over the United States, in the last ten years, social media became the place to be.  Due to mostly unregulated activity, it quickly grabbed the attention of those perpetrating "get rich quick" scams and other illegal behavior.

2. Back in 2017, thousands of miles apart, two "entrepreneurs" realized that they can defeat the laws and harness the power of undisclosed advertising on Instagram.

3. Billy McFarland paid hundreds of social media influencers and celebrities in order to promote a scam known as the Fyre Festival. The influencers made it look like they endorsed the festival and posted an orange square while mentioning the festival in the caption and tagging it in their social media post. None of these influencers mentioned the material connections they had with McFarland or Fyre. It was probably the first major scam on Instagram that involved undisclosed endorsements.

4. At the same time, Xu Xi (a/k/a Chris Xu, Shy Xu, and Xu Yangtian), entered the U.S. Market with the same idea. SHEIN, his company, will make a fortune online by paying hundreds of Instagram influencers to pretend they like SHEIN.

5. While McFarland ended up in federal prison, SHEIN became a multi-billion dollar company, surpassing H&M, Zara, and other major retailers with hundreds brick-and-mortar stores in the U.S.

6. Shein's customer base and sales have exploded since early 2020 and it is comprised mainly of social media users.  Shein's global annual revenue is estimated to have grown from around $3 billion in 2019 to around $30 billion in 2022, with approximately $9.6 billion in the United States in 2022.  In the first half of 2022, Shein's mobile app was the most downloaded shopping app in the U.S., eclipsing Amazon, with approximately 22.4 million downloads during those six months.

7.      How is it possible that a Chinese company, with no fashion designers or background, selling flea-market quality clothes, became a giant in the fast-fashion industry in the U.S.?  The answer is simple: undisclosed endorsements on social media. Without having the chance to try the clothes, millions of consumers, including the class representatives and class members, relied **exclusively** on the advice of social media influencers. They were duped into purchasing clothes, makeup, and home furnishings from SHEIN and their brands. Invariably they paid much more than the market value for these products.

8.      This action is arising from the deceptive, unfair and misleading promotion of SHEIN products in the states of Illinois, California, Pennsylvania and throughout the United States.

9.      This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants ROADGET BUSINESS PTE. LTD d/b/a SHEIN, SHEIN US SERVICES, SHEIN DISTRIBUTION CORPORATION (collectively "SHEIN"), and so-called "Influencers" illegally promoting SHEIN products on social media: BIANCA ANASTASIA ARCORI, ABBY BAGLEY, MANUELA BRIT, TALA GOLZAR, ANASTASIA KARANIKOLAOU, CYDNEY MOREAU and CINDY PRADO (together "Influencers").

10.      During the Class Period (defined below), the Influencers misrepresented the material connection they have with SHEIN by endorsing SHEIN products without disclosing the fact that they were paid to do it, a practice that is highly unfair and deceptive.

11.      Relying on the undisclosed endorsements and misleading advertising, Plaintiffs and the Class Members (defined below) purchased SHEIN products and paid a premium, while the SHEIN products proved to be of a much lower value than the price paid.

12.      SHEIN and the Influencers are involved in deceptive, unfair and misleading practices by endorsing and promoting SHEIN products on social media without disclosing the material relationship between the SHEIN brand and the "Influencers." Such practice is highly unfair and deceptive.

13.      SHIEN products are sold exclusively online, with many of their customers during

the class period being social media users exposed to the undisclosed advertising.

14.     In in order to artificially inflate the prices for the SHEIN products, both SHEIN and the Influencers devised a scheme in which the Influencers will endorse SHEIN products by tagging or recommending such products, pretending they are disinterested consumers.

15.     Relying on the undisclosed endorsements and the misleading advertising, Plaintiffs and the Class Members (defined below) purchased SHEIN products and paid a premium, while the SHEIN products purchased proved to be of a much lower value than the price paid.

## JURISDICTION AND VENUE

16.     This is a national class action, including every purchaser of SHEIN Products in the United States.

17.     SHEIN's revenue will reach $50 billion this year, a good part of which can be directly attributed to the undisclosed advertising on social media, therefore the estimated damages in this case are of at least US$ 500,000,000.

18.     The National Class is comprised of at least one million people who purchased SHEIN products during the Class Period.

19.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

20.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' related state law claims.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The Defendants are alleged to perpetrate their illegal conduct in Cook County, Illinois. At least one plaintiff resides in Cook County, Illinois.

## NATURE OF THE ACTION

22.     Plaintiffs, Amanda Bengoechea, Jennifer Simoni, Jully Romero, Rebekka Lien, Rachel Berkowitz, Shantiel Poole, Shantel Hash, and Diana Lopez, on behalf of themselves and

all those similarly situated Class Members, seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants Roadget Business Pte. Ltd d/b/a SHEIN, Shein US Services LLC, Shein Distribution Corporation, Bianca Anastasia Arcori, Abby Bagley, Manuela Brit, Tala Golzar, Anastasia Karanikolaou, Cydney Moreau, and Cindy Prado, for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of Illinois Uniform Deceptive Trade Practices Act, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, violation of California Unfair Competition Law, violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act.

## THE PARTIES

23.     Plaintiff, AMANDA BENGOECHEA ("Bengoechea"), is a citizen of California who resides in Placer County, CA and is otherwise *sui juris*.

24.     Plaintiff, RACHEL BERKOWITZ ("Berkowitz"), is a citizen of California who resides in Los Angeles County, CA and is otherwise *sui juris*.

25.     Plaintiff, SHANTEL HASH ("Hash"), is a citizen of Pennsylvania who resides in York County, PA and is otherwise *sui juris*.

26.     Plaintiff, REBEKKA LIEN ("Lien"), is a citizen of California who resides in Los Angeles County, CA and is otherwise *sui juris*.

27.     Plaintiff, DIANA LOPEZ ("Lopez"), is a citizen of California who resides in Glenn County, CA and is otherwise *sui juris*.

28.     Plaintiff, SHANTIEL POOLE ("Poole"), is a citizen of California who resides in Contra Costa County, CA and is otherwise *sui juris*.

29.     Plaintiff, JULLY ROMERO ("Romero"), is a citizen of California who resides in Los Angeles County, CA and is otherwise *sui juris*.

30.     Plaintiff, JENNIFER SIMONI ("Simoni"), is a citizen of Illinois who resides in Cook County, IL and is otherwise *sui juris*.

31.     Plaintiffs bring this action on their behalf and on behalf of all other persons similarly situated class members.

32.     Defendant ROADGET BUSINESS PTE. Ltd d/b/a SHEIN ("SHEIN"), is a company registered in Singapore doing business worldwide and in the United States. SHEIN operates its entire US marketing program, as well as its US compliance program from California. SHEIN owns the website https://us.shein.com, the corresponding mobile application, and the @shein_us, @sheinofficial, @sheglam_official, @muserastore, @romwe, @luvlette, @cuccoofootwear, @ glowmode_official, @sheglam_official, @motf_official, @emeryrose.official, @ jnsq__official Instagram accounts.

33.     Defendant SHEIN US SERVICES, LLC., ("SHEIN US"), is a company formed in Delaware, with its principal address at 777 S. Alameda St. 2nd Floor, Los Angeles, CA 90021. SHEIN US is doing business in Illinois, California and throughout the United States.

34.     Defendant SHEIN DISTRIBUTION CORPORATION LLC., ("SHEIN DISTRIBUTION"), is a company registered incorporated in Delaware, with its principal address at 777 S. Alameda St. 2nd Floor, Los Angeles, CA 90021. DISTRIBUTION is doing business is doing business in Illinois, California and throughout the United States as an affiliate and licensee of Roadget Business Pte. Ltd.

35.     SHEIN entities are transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide.

36.     Discovery will reveal the precise responsibilities and roles of each of the SHEIN entities in connection with the allegations in the Complaint, but a substantial part of the conduct has occurred in the United States.

37.     Defendant BIANCA ANASTASIA ARCORI, ("Arcori") is a citizen of Spain who resides in Barcelona and is otherwise *sui juris*. Arcori is transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia,

and nationwide. Arcori's Instagram handle is: @anastasiajadore.



Instagram post available at: https://www.instagram.com/p/ClUNKNkLnD4/

38.     Defendant ABBY BAGLEY ("Bagley") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Bagley is transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide. Bagley's Instagram handle is @abbybagley.



Instagram post above available at: https://www.instagram.com/p/CvDKfU4utTo

39.     Defendant MANUELA BRIT ("Brit") is a citizen of Florida who resides in Palm

Beach County and is otherwise *sui juris*. Brit is transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide. Brit's Instagram handle is @manuelabrit



Instagram post above available at: https://www.instagram.com/p/DAddaXmufYu/

40.     Defendant TALA GOLZAR, ("Golzar") is a citizen of California who resides in Ventura County and is otherwise *sui juris*. Golzar is transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia, and nationwide. Golzar's Instagram handle is @talagolzar



Instagram post available at: https://www.instagram.com/p/CmPQIiNvKuU

41.     Defendant ANASTASIA KARANIKOLAOU a/k/a Anastasia Lehane Karanikolaou, ("Karanikolaou"), is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Karanikolaou is transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide. Karanikolaou's Instagram handle is @staskaranikolaou



Instagram posts available at:   https://www.instagram.com/p/C6rhEGjSaf2/
                                https://www.instagram.com/p/C6W0Sd_vfoo/

42.     Defendant CYDNEY MOREAU ("Moreau") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Moreau is transacting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide over the internet and actively soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide. Moreau's Instagram handle is @cydrrose

43.     Defendant CINDY PRADO ("Prado") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Prado is transacting business in California, Illinois, Pennsylvania, Virginia, the District of Columbia, and nationwide over the internet and actively

soliciting business in California, Pennsylvania, Illinois, Virginia, the District of Columbia and nationwide. Prado's Instagram handle is @cindyprado.



## **STATEMENT OF FACTS**

44.     Social media emerged in the last ten years as a main source of information and communication[1] for billions of internet users.

45.     There were an estimated 159 million Instagram users in the United States in 2022[2].

46.     In 2021 the platform engaged with over 2 billion monthly users[3].

47.     In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media.

48.     Since 2017, Instagram has grown tremendously, adding 100 million users every

---

[1] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

[2] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

[3] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil,* https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).

few months[4]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[5]

49.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for social media influencers regarding proper advertising practices[6].

50.     The impact of social media influencers on our society is incredibly powerful. As the World Health Organization raised questions this summer about the risks of a popular artificial sweetener, a new hashtag began spreading on the social media accounts of health professionals: #safetyofaspartame.[7] Behind the hashtag was *American Beverage*, a trade and lobbying group representing Coca-Cola, PepsiCo and other companies.

51.     However, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight.

52.     Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[8].

53.     This is because some unscrupulous "influencers" are acting as advertisers for hire,

---

[4] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[5] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[6] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

[7] O'Connor, Anahad, et al. "The food industry pays 'influencer' dietitians to shape your eating habits." *Washington Post*, 16 Sept. 2023. (last visited Oct.1, 2024.)

[8] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns*. http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to use specific products in the content they create and display on their profile. As such, they are endorsing products without disclosing the material connections with the advertiser. These "influencers" advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the high prices they are demanding.

54.     According to this business model, a number of carefully selected influencers will pretend to use products from SHEIN brands and present this fact to their followers, effectively endorsing such products, while being properly compensated, without disclosing any material relationship with any SHEIN entity.

55.     It is undisputed that endorsements (especially the undisclosed ones) increase sales for the brand, as it is more likely a consumer will buy products that were referred to them, than products that were advertised to them.

56.     The marketing and sales strategy and the misleading claims above were developed by SHEIN in California and implemented at the direction of its staff located in California. Also, SHEIN warrants, and oversees regulatory compliance and product distribution from California.

57.     Plaintiffs and Class Members purchase such products at artificially inflated prices, exclusively because of the way the SHEIN products are advertised on social media and the misleading content of the advertisement.

58.     SHEIN brands its products under various names and promotes its products using multiple social media accounts: @shein_us, @sheinofficial, @sheglam_official, @muserastore, @romwe, @luvlette, @cuccoofootwear, @glowmode_official, @sheglam_official, @motf_official, @emeryrose.official, @ jnsq__.

59.     Amanda Bengoechea purchased products online from SHEIN in 2024 as a result of the brand being endorsed by influencers, including Bianca Anastasia Arcori, Abby Bagley, Manuela Brit, Tala Golzar, Anastasia Karanikolaou, Cydney Moreau, and Cindy Prado.

60.     Rachel Berkowitz purchased products online from SHEIN in 2022 as a result of the brand being endorsed by influencers, including Brit Manuela, Abby Bagley and Bianca Anastasia Arcori.

61.     Shantel Hash purchased products online from SHEIN in 2023 as a result of the brand being endorsed by influencers, including Brit Manuela, Abby Bagley and Bianca Anastasia Arcori.

62.     Rebekka Lien purchased products online from SHEIN in 2024 as a result of the brand being endorsed by influencers, including Tala Golzar.

63.     Diana Lopez purchased products online from SHEIN in 2024 as a result of the brand being endorsed by influencers, including Bianca Anastasia Arcori and Abby Bagley.

64.     Shaintiel Poole purchased products online from Shein in 2023 as a result of the brand being endorsed by influencers including Cydney Moreau, Brit Manuela, Cindy Prado, Tala Golzar, Abby Bagley and Bianca Anastasia Arcori.

65.     Jully Romero purchased products online from SHEIN in 2024 as a result of the brand being endorsed by influencers, including Brit Manuela and Cindy Prado.

66.     Jennifer Simoni purchased products online from SHEIN in 2024 as a result of the brand being endorsed by influencers, including Bianca Anastasia Arcori, Abby Bagley, Manuela Brit, Tala Golzar, Anastasia Karanikolaou, Cydney Moreau, and Cindy Prado.

## THE INFLUENCERS

67.     Despite being compensated for endorsing the brand by pretending to wear SHEIN products, none of the Influencers use the "paid partnership" tag suggested by the FTC and Instagram. Some of the Influencers provide a buried small disclosure so it would be almost impossible for a social media user to discern the fact that the post was sponsored, including a long hashtag in a list of hashtags that only appear if the reader decides to press the "More" button .

68.      Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by

the FTC found at 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[9]

69.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.



"Paid partnership"

"#ad"

Post available at: https://www.instagram.com/talagolzar/p/Cn7aaTEvP-x/

70.     Plaintiffs are "following" all the Influencers on social media. Plaintiffs' decision to purchase SHEIN products and pay a premium for them was determined by the Influencers they followed, specifically by the Defendants in this case, and the fact that they endorsed SHEIN products.

71.     Plaintiffs would not have purchased the products if they knew that the Influencers were paid to pretend that they like SHEIN and endorse the brand, and that the Influencers' claims were unfair and misleading.

## THE ADVERTISING

72.     Facebook, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are

---

[9] Federal Trade Commission, *supra* note 7.

created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

73.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

74.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines and the FTC interpretation of the FTC Act.

75.     Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Influencers and SHEIN are going to great lengths to hide the nature of their partnership.

76.     Every time an influencer advertises and endorses a product, such advertisement may appear in the Instagram *feed* of the Instagram users following the particular influencer. Also, at times, Instagram will "suggest" the post to users that are not following the influencer but have similar interests.

77.     The Influencers are also endorsing SHEIN products in their posts by tagging SHEIN or the other brands under which SHEIN operates.

78.     An "endorsement" is any "advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser. The party whose opinions, beliefs, findings, or experience the message appears to

reflect will be called the endorser and may be an individual, group, or institution." 16 C.F.R. § 255.0(b)

79.     The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

80.     As interpreted by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[10]

81.     By advertising SHEIN products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and, as such, their actions are in violation of the "little FTC Acts" enacted in Pennsylvania, Illinois and California.

82.     By instructing and allowing the influencers to advertise its products without making the proper disclosures, SHEIN is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in Florida, Pennsylvania, Illinois and California.

## SHEIN

83.     SHEIN was started in China, and it was traditionally not involved in design and manufacturing, but rather in selling cheap merchandise. SHEIN was acquiring its items from Guangzhou's wholesale clothing market, a type of flea market[11].

84.     SHEIN expanded internationally and made their products available in Spain, France, Russia, Italy, and Germany in the early 2010s. At that time SHEIN started selling cosmetics, shoes, purses, and jewelry, in addition to women's clothing.

85.     However, in order to enter the U.S. market, SHEIN needed to be present on social

---

[10] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

[11] *See* https://en.wikipedia.org/wiki/Shein (last visited Jan 31, 2025).

media. Using social media platforms where regulation is scarce, most notably the Chinese-owned TikTok, as well as Instagram, SHEIN, became especially popular among young women across the globe. And while SHEIN is based out of China, it ships to 220 countries, with the U.S. serving today as its largest consumer market[12].

86.     Among the ultra-fast fashion retailers, SHEIN is by far the largest enterprise with more than 75% of U.S. market share in 2022.  It also has a 50% share among the combined markets of fast-fashion and ultra-fast fashion.  It sells a wide variety of products, including men's, women's, and children's apparel, in the U.S. through its website, https://us.shein.com, and its corresponding mobile app.

87.     SHEIN does not have brick-and-mortar stores in the U.S. and relies exclusively on online sales, most of which are generated by the undisclosed advertising on social media.

88.     SHEIN is contracting with manufacturers and distributes products under several brands it owns: SHEIN, Dazy, Emery Rose, SHEGLAM, MOTF, Cozy Club, Luvlette, JMMO, JNSQ, Missguided, Musera, Romwe, Romwe Men, Cuccoo, and Glowmode.

89.     SHEIN offers products on the ultra-fast fashion and the fast fashion markets, and satisfies the demands of fashion's younger, social-media trend driven consumer, who has a strong preference for maximizing their ability to chase new trends on a tight budget.

90.     SHEIN's competition on the ultra fast-fashion market consists of other online-only retailers like TEMU.

91.     TEMU is consistently offering lower prices than Shein.  An analysis of identical products that were offered on both SHEIN and TEMU's platforms showed that the prices on TEMU were usually 10-40% less than those on SHEIN.

92.     While TEMU is also using influencer marketing, it is a stark difference in the way both companies work. TEMU, for example is asking the influencers to properly disclose the

_____

[12] *See* https://www.vox.com/the-goods/22573682/shein-future-of-fast-fashion-explained (last visited Jan 31, 2025)

material relationship with the brand by using the "Paid Partnership" label and comply with the FTC interpretation of the FTC Act.



Instagram post available at: https://www.instagram.com/p/ C4D_tpRv4k_/

93.     On the other hand, SHEIN and the Influencers are hiding the "ad" hashtag at the end of the post, where the user need to press "more" to see it, are hiding a partnership tag in between many other hashtags, or are omitting altogether any reference of the fact that the endorsement is not the Influencer's honest opinion, but rather paid advertising.

94.     The FTC states that the disclosure should be "difficult to miss." Also, the disclosure should identify who the sponsor of the post is[13]. None of the disclosures are present in the Influencer's posts about SHEIN products.

95.     Out of the considerable profits obtained by SHEIN from this scheme, part of the money is paid to the Influencers for their indispensable role.

**THE UNDISCLOSED ADVERTISING**

96.     While the practice employed by SHEIN and the Influencers is very profitable, it is, nevertheless, illegal. Federal law, California law, Pennsylvania law, and Illinois law, all prohibit such commercial behavior.

97.     Plaintiffs saw SHEIN products being worn or used by the endorsing Instagram influencers they followed which led to them purchasing SHEIN products, which proved to be of

---

[13] https://www.ftc.gov/enforcement/notices-penalty-offenses/penalty-offenses-concerning-endorsements (last visited June 25, 2024)

an inferior quality compared with the expectations the Plaintiffs had and the premiums they paid for the SHEIN products.

98.     By looking at the Instagram posts prior to making their purchases, Plaintiffs were unable to discern the fact that those posts were paid posts, rather than organic, honest endorsements by the Influencers.

99.     But for the Influencers' endorsement and the misleading advertising claims, Plaintiffs and the Class Members would not have purchased SHEIN products.

100.    In deciding to purchase SHEIN products, Plaintiffs and Class Members followed what they believed to be the honest advice of the Influencers. None of the posts Plaintiffs saw mentioned, as required, that the Influencers are nothing more than paid advertisers for the brand.

101.    Sometimes Influencers will endorse SHEIN by simply tagging SHEIN in their posts, suggesting that this is their choice for clothing, footwear and cosmetics.

102.    Other times the Influencers will specifically indicate that the SHEIN products are their favorite clothing, shoes, or their favorite makeup.

103.    The Influencers often try to convince consumers to purchase SHEIN products, even directing the consumer to go online and make purchases.

104.    This undisclosed advertising has been prevalent on Instagram in the last few years. Defendants are advertising SHEIN products on Instagram more than ten times, without mentioning even once that they are paid (substantial amounts) to advertise SHEIN and keep it quiet.

## CLASS ALLEGATIONS

105.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

106.    Plaintiffs assert the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

107.    Plaintiffs are filing this lawsuit on behalf of all persons that purchased SHEIN products online relying on misleading marketing practices and Influencers from June 24, 2019, to present ("Class Period").

108.     Plaintiffs Lopez, Berkowitz, Romero, Lien, Poole, are citizens of California and seek to represent four classes composed of and defined as follows:

a.     Nationwide Class: All consumers that purchased SHEIN products in the United States.

b.     California Subclass: All California residents that purchased SHEIN Products.

c.     Virginia Subclass: All Virginia residents that purchased SHEIN Products.

d.     D.C. Subclass: All residents of the District of Columbia that purchased SHEIN Products.

109.     Plaintiff Simoni seeks to represent three classes composed of and defined as follows:

a.     Nationwide Class: All consumers that purchased SHEIN products in the United States (same as above).

b.     Illinois Subclass: All Illinois residents that that purchased SHEIN products.

c.     D.C. Subclass: All residents of the District of Columbia that purchased SHEIN Products.

110.     Plaintiff Hash seeks to represent three classes composed of and defined as follows:

a.     Nationwide Class: All consumers that purchased SHEIN products in the United States (same as above).

b.     Pennsylvania Subclass: All Pennsylvania residents that that purchased SHEIN products.

c.     D.C. Subclass: All residents of the District of Columbia that purchased SHEIN Products.

111.     Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members"

112.     The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries,

and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

113.     Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limited to particular issues.

114.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

115.     <u>Numerosity</u>: At least one million consumers have been injured by Defendants' deceptive marketing practices, including Plaintiffs.  At least one million consumers have purchased SHEIN products and paid a premium for it in reliance on the Defendants' representations.

116.     Each of the classes represented by Lopez, Berkowitz, Romero, Lien, Poole, Simoni and Hash have at least one million members and the joinder of all members is impracticable.

117.     <u>Typicality</u>: Plaintiffs' story and their claims are typical for the class and, as the named Plaintiffs, they are aware of other persons in the same situation. Plaintiffs and the members of each class sustained damages arising out of Defendants' illegal course of business.

118.     <u>Commonality</u>: Since the whole class purchased SHEIN products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

119.     <u>Adequacy</u>: Lopez, Berkowitz, Romero, Lien, Poole, Simoni and Hash will fairly and adequately protect the interests of each class they represent.

120.     <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

121.     Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs' Counsel and for the putative class members are experienced and competent in litigating class actions.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
(not pled as an independent cause of action)

122.     By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

123.     By failing to mandate and enforce disclosure of material connections with the Influencers, SHEIN is in violation of 15 U.S.C. § 45(a).

124.     The FTC  interprets 15 U.S.C. § 45(a) stating that any material connection should be "clearly and consciously disclosed," and that failure to disclose material connections could subject both the influencers and the advertisers to civil penalties[14].

125.     The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

## CAUSES OF ACTION

## COUNT I: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT
**(On behalf of Plaintiff Simoni and Illinois Subclass)**

126.     Plaintiff incorporates by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Simoni asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

127.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

128.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or

---

[14] https://www.ftc.gov/system/files/attachments/penalty-offenses-concerning-endorsements/npo_endorsement_template_letter.pdf  (last visited June 25, 2024)

employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

129. The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

130. Defendant is a "person" as defined by section 505/1(c) of the ICFA.

131. Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

132. The SHEIN products sold online constitutes "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

133. Defendants' misrepresentations and omissions regarding the endorsements obtained by SHEIN are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

134. Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a), which should be considered as a violation of 815 ILL. COMP. STAT. ANN. 505/2

135. Defendants violated the ICFA when it misrepresented facts regarding SHEIN products. Accordingly, the misrepresentations were the central reason for consumers chose to purchase SHEIN products over other alternatives, and to pay a premium for it.

136. Plaintiff and Class Members relied upon Defendants' misrepresentations and omissions when they SHEIN products.

137. If Plaintiff and Class Members had been aware of the true characteristics of the SHEIN products, or the fact that the Influencers are not honest consumers but that they are paid to promote SHEIN, they would not have purchased it.

138. Defendants also violated section 510/2(a)(5) of the DTPA by representing that SHEIN products have characteristics that don't have. Apart from selling products that one may consider toxic, SHEIN is one of the main contributor to clothes ending up in landfill.

139. Plaintiff and Class Members saw Defendants' marketing and online advertising materials prior to purchasing SHEIN products, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased SHEIN products.

140. Defendants' misrepresentations and omissions regarding SHEIN products were acts likely to mislead the Plaintiff and Class Members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

141. As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class Members have suffered harm in the form of monies paid in exchange for the SHEIN products they purchased because they paid more than what they would have otherwise paid had they know the true nature of the product.

142. The value of the loss, calculated as the price paid for a SHEIN product less the value of the products is of $5,000,000 for the entire Illinois Subclass.

143. Defendants' practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

## COUNT II: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Simoni and Illinois Subclass)

144. Plaintiff incorporates by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Simoni asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above.

145. At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

146. Furthermore, Defendants represent that SHEIN products have endorsements that it does not have.

147. Defendants advertises SHEIN products with the intent not to sell them as advertised by using the false and misleading advertising and marketing detailed above.

148. Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class.

149. Accordingly, Defendants have violated the DTPA.

## COUNT III: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEO*.

**(On behalf of all Plaintiffs, the Nationwide Class and California Subclass)**

150.    Plaintiffs incorporate by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above.

151.    The conduct that forms the basis of this action arose in California, the state in which SHEIN has its U.S. headquarters and principal place of operations in the U.S.

152.    Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

153.    Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

154.    Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

155.    Plaintiffs and Class Members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770, and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

156.    As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

      a.    Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

      b.    Defendants misrepresented the affiliation, connection, or association with, or certification by another.

      c.    Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

      d.    Defendants advertised goods or services with intent not to sell them as

advertised;

157.   Pursuant to the provision of Cal. Civ. Code §1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

### COUNT IV: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ*
**(On behalf of All Plaintiffs, the Nationwide Class and the California Subclass)**

158.   Plaintiffs incorporate by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

159.   The conduct that forms the basis of this action arose in California, the state in which SHEIN has its U.S. headquarters and principal place of operations in the U.S. Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

### Unfair And Fraudulent Competition

160.   Defendants has engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

161.   Plaintiffs, the class members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

162.   Defendants promoted and advertised SHEIN products without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

163.   A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per se violation of the California Unfair Competition Law ("UCL").

### Unlawful Competition

164.   The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes

and/or common law remedies. Plaintiffs hereby incorporate by reference all prior causes of action into this cause of action.

## Violations of Advertising Law

165.     By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, *ET SEQ*.

166.     "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'" (*Kasky, supra*, 27 Cal.4th at p. 950.) Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."' [Citation.]" (*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 679.)

167.     Plaintiffs, the Nationwide Class Members and the California Subclass Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class Members any monies Defendant acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

168.     Plaintiffs and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### COUNT V: VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 P.S. §§201-1 - 201-9.2 (On behalf of Plaintiff Hash and the Pennsylvania Subclass)

169.     Plaintiff incorporates by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Hash asserts this count on her own behalf and on behalf of the Pennsylvania Subclass, as defined above.

170.     At all times relevant hereto, there was in full force and effect the Pennsylvania

Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 - 201-9.2 ("UTPCPL").

171.    The Law defines "Unfair methods of competition" and "unfair or deceptive acts or practices" to mean: "(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another."  73 P.S. §201-2(4)(iii).

172.    Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiff and the Subclass as to the connection between the Influencer promoting the SHEIN products and the brand.

173.    Accordingly, Defendants have violated the UTPCPL.

174.    Plaintiff and Class Members seek damages of $100 per occurrence, treble damages and attorneys' fees and costs 73 Pa. Stat. § 201-9.2.

### COUNT VI: VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT
### Va. Code Ann. § 59.1-196 et seq.
### (On behalf of Plaintiffs Lopez, Berkowitz, Romero, Lien, Poole, and the Virginia Subclass)

175.    Plaintiff incorporates by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Hash asserts this count on her own behalf and on behalf of the Pennsylvania Subclass, as defined above.

176.    At all times relevant hereto, there was in full force and effect the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 et seq. ("VPL").

177.    The Law declares as unlawful "Misrepresenting the affiliation, connection, or association of the supplier, or of the goods or services, with another."  VPL, § 59.1-200.3.

178.    Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiff and the Subclass as to the connection between the Influencer promoting the SHEIN products and the brand.

179.    Accordingly, Defendants have violated the VPL.

180.    Plaintiffs and Class Members seek actual damages, statutory and treble damages in accordance with the VPL.

### COUNT VII: VIOLATIONS OF DISTRICT OF COLUMBIA'S

**CONSUMER PROTECTION PROCEDURES ACT**
**DC Official Code §§ 28-3901 to 28-3913.**
**(On behalf of all Plaintiffs and the D.C. Subclass)**

181.    Plaintiff incorporates by reference paragraphs 1-125 of this Complaint as if fully re-written herein. Hash asserts this count on her own behalf and on behalf of the Pennsylvania Subclass, as defined above.

182.    At all times relevant hereto, there was in full force and effect Chapter 39 of Title 28 of the D.C. Code, also known as the Consumer Protection Procedures Act or "CPPA."

183.    CPPA gives "due consideration and weight" to the Federal Trade Commission or FTC, as well as legal precedent.

184.    As Defendants are in violation of the 15 U.S.C. § 45(a), Defendants are in violation of the CPPA.

185.    Plaintiffs and Class Members seek actual damages, statutory and treble damages in accordance with the CPPA.

**COUNT VIII: UNJUST ENRICHMENT**
**(On behalf of All Plaintiffs, the Illinois, Pennsylvania and California Subclasses)**

186.    Plaintiffs incorporate by reference paragraphs 1-125 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

187.    By paying the high prices demanded by SHEIN, Plaintiffs and Class Members conferred a direct benefit to all the Defendants.

188.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate the Plaintiffs, they would be unjustly enriched as a result of their unlawful act or practices.

**Unjust Enrichment under Illinois law (on behalf of Illinois subclass)**

189.    It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust

enrichment.

190.    Here, the defendants have unjustly retained a benefit to the plaintiffs' detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience

**Unjust Enrichment under Pennsylvania law (on behalf of Pennsylvania subclass)**

191.    Here, Plaintiffs conferred benefits upon the Defendants; Defendants realized those benefits; and Defendants accepted and retained the benefits under circumstances in which it would be inequitable for it to retain them without payment of value.

192.    Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Pennsylvania Subclass, the Plaintiffs request the disgorgement of these ill-gotten money.

**Unjust Enrichment under California law (on behalf of California subclass)**

193.    In this case, Defendants received a benefit at Plaintiffs' expense, and it would be unfair for Defendant to keep the benefit without compensating a proportionate amount to the Plaintiff.

194.    Due to Defendants' conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

**COUNT IX: NEGLIGENT MISREPRESENTATION**
**(On behalf of All Plaintiffs and the Nationwide Class)**

195.    Plaintiffs incorporate by reference all paragraphs 1-125 of this Complaint as if fully rewritten herein. As set forth above, the Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

196.    Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiffs to purchase SHIEN products, the Defendants made representations that they knew to be false, or negligently failed to examine the veracity of the affirmations.

197.    As a result of Defendants' negligent misrepresentations, Plaintiffs and the Nationwide Class Members suffered injury.

## DEMAND FOR JURY TRIAL

198.    Plaintiffs and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Jennifer Simoni, Jully Romero, Rebekka Lien, Rachel Berkowitz, Shantiel Poole, Shantel Hash, and Diana Lopez, respectfully request that judgment be entered in their favor and in favor of the Class Members as follows:

a.    Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

b.    Declaring the Defendants in violation of each of the counts set forth above;

c.    Awarding the Plaintiffs and those similarly situated compensatory, punitive, and treble damages in excess of $50,000,000;

d.    Awarding the Plaintiffs and those similarly situated liquidated damages;

e.    Order the disgorgement of ill-gotten monies;

f.    Awarding each of the named Plaintiffs a service award;

g.    Awarding pre-judgment, post-judgment, and statutory interest;

h.    Awarding attorneys' fees and costs;

i.    Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial of the claims asserted in this Class Action Complaint.


Dated: February 10, 2025                    Respectfully submitted,

                                            /s/ Keith L. Gibson
                                            Keith L. Gibson, Esq.
                                            KEITH GIBSON LAW, P.C.
                                            586 Duane Street, Suite 102
                                            Glen Ellyn, IL 60137
                                            Telephone: (630) 677-6745
                                            Email: keith@keithgibsonlaw.com

Bogdan Enica, Esq.
KEITH GIBSON LAW, P.C.
1200 N. Federal Highway, Suite 300
Boca Raton, FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Counsel for Plaintiffs and the Putative Class*